1

2

3

4

5

6

7

8

9

10

11

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

12 MARCUS PLAYER,                    )   Civil No.04CV1761 LAB (WMc)

13            Plaintiff,   )   **REPORT AND RECOMMENDATION**
                              )   **OF UNITED STATES MAGISTRATE**

14 v.                          )   **JUDGE:**
                              )

15                               )   **(1) DENYING IN PART AND**
JEANNE WOODFORD, et al.,   )   **GRANTING IN PART DEFENDANT**

16                               )   **SALAS AND DAVIS' MOTION TO**
          Defendants.   )   **DISMISS;**

17                               )
                              )   **(2) DENYING IN PART AND**

18                               )   **GRANTING IN PART DEFENDANT**
                              )   **PRUNTY'S MOTION FOR JUDGMENT**

19                               )   **ON THE PLEADINGS; AND**
                              )

20                               )   **(3) DENYING PART AND GRANTING**
                              )   **IN PART DEFENDANTS' MOTION TO**

21                               )   **STRIKE**
                              )

22                               )

23

24       This Report and Recommendation is submitted to United States District Judge Larry M. Burns,

25 pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.3 of the United States District Court for the Southern

26 District of California. After reviewing the pleadings, parties' briefs, the request for judicial notice and

27 exhibits filed in support thereof, for the reasons set forth below, the Court recommends that the Motion to

28 Dismiss of Defendants Salas and Prunty be **DENIED IN PART AND GRANTED IN PART**; that

1  Defendant Prunty's Motion for Judgment on the pleadings be **DENIED IN PART AND GRANTED IN**

2  **PART;** and that Defendants' motion to strike be **DENIED IN PART AND GRANTED IN PART.**

3

**I.**

4

**PROCEEDINGS**

5      On August 31, 2004, Marcus Player ("Plaintiff"), a state prisoner at Calipatria State Prison filed this

6  civil rights action pursuant to 42 U.S.C. § 1983. [Doc. no. 1.]  The district court granted Plaintiff leave to

7  proceed in forma pauperis ("IFP").   [Doc. no. 4.]  Plaintiff filed a first amended complaint ("FAC") on

8  December 14, 2004 .  [Doc. no. 5.]  On August 9, 2005, Defendant K.W. Prunty filed an answer to

9  Plaintiff's First Amended Complaint ("Prunty's Answer").  [Doc. no. 20.]

10      On February 23, 2006, the Court directed the U.S. Marshal to effect service of Plaintiff's First

11  Amended Complaint on Defendants Reed, Davis and Salas.  [Doc. no. 35.][1]  On August 18, 2006,

12  Defendants Salas and Davis filed a Motion to Dismiss the First Amended Complaint pursuant to

13  FED.R.CIV.P. 12(b)(6).  [Doc. nos. 57, 58 and 59.]  Defendant Prunty filed a Motion for Judgment on the

14  Pleadings pursuant to FED.R.CIV.P. 12(c) on August 18, 2006.  [Doc. nos. 57, 58 and 59.]  Plaintiff filed

15  his Opposition to Defendants' various motions on September 25, 2006.  [Doc. nos. 63, 64 and 65.]

16  Defendants filed their reply on October 13, 2006 [Doc. No. 62.]

17

**II.**

18

**PLAINTIFF'S FACTUAL ALLEGATIONS**

19      Plaintiff alleges that on June 21, 1995, he filed an inmate grievance 602 form with the Calipatria

20  State Prison ("Cal-IV") to protest the "brutal transfer" of more than forty African-American inmates and

21  "all others including himself who stood to be similarly harmed"  from the general population at Cal-IV

22  to the Security Housing Unit at the California State Prison in Corcoran  ("COR-SHU").  (FAC, p. 3.)

23      On August 16, 1995, Plaintiff alleges that he was removed from the Cal-IV general population as

24  a result of his "602 actions" and placed in Administrative Segregation ("Ad-Seg").  (FAC, p. 3.)  On the

25  day of his transfer, Plaintiff alleges that one of two unidentified officers of the Investigative Service

26

27
_____

28      [1]Plaintiff's claims against Defendants Woodford and Jensen were dismissed in the Court's March 3, 2005 Order
[Doc. no. 7.]  Defendant Bobbie L. Reed is believed to be deceased. See Decl. of Celia Valdivia [Doc. no. 50.]

2

1  Unit told him that he was being transferred to Ad-Seg because Plaintiff "need[ed] to learn to do [his]

2  own time."  (FAC, p. 3.)

3      Plaintiff further alleges that on August 24, 1995, he received a copy of a Rules Violation Report

4  ("RVR-115") authored by Defendant Salas on August 16, 1995, alleging that Plaintiff conspired to

5  assault prison staff.  (FAC, p. 3.)  Plaintiff alleges that the August 16, 1995 RVR "was base [sic] on

6  information from an inmate confidential source but the facts and circumstances at CAL-IV did belie

7  those statements of thier [sic] confidential source and thus defendant Salas knew his report was false and

8  infact [sic] the RVR-115 was made up by Salas from whole clothe [sic] and rubber stamped with the

9  name of one of several of their inmate agents a practice and pattern often use [sic] against targeted

10  inmates in CDC."  (FAC, p. 3.)

11     On August 24, 1995, Plaintiff was seen by the Institutional Classification Committee ("ICC")

12  chaired by Defendant Warden Prunty.  The ICC allegedly retained Plaintiff in Ad-Seg based on the

13  August 16, 1995 RVR.  Plaintiff alleges he wrote to Defendant Prunty to notify him that the RVR was

14  false and request that Prunty investigate the RVR and release Plaintiff from Ad-Seg.  (FAC, p. 4.)

15     On October 28, 1995, Plaintiff alleges that had a prison disciplinary hearing regarding the

16  allegedly false RVR before Defendant Davis.  Plaintiff further alleges that Defendant Davis found

17  Plaintiff guilty as charged. (FAC, p. 4.)  On November 2, 1995, Plaintiff alleges that he was sentenced to

18  twelve months in COR-SHU and an extension of his prison sentence by 150 days.  (FAC, p. 4.)  Plaintiff

19  alleges that he was subsequently transferred to COR-SHU.  (FAC, p. 4.)

20     On May 17, 2000, Plaintiff alleges he was returned to Calipatria State Prison.  Plaintiff also

21  alleges that in June of 2000 he discovered a general chronology dated April 12, 1996, prepared by

22  Defendant Prunty, that impugned the credibility of the confidential prison source  Defendant Salas relied

23  upon for the August 16, 1995 RVR.  Plaintiff alleges he was thereafter successful in bringing a writ of

24  habeas corpus before the California Court of Appeal which vacated the finding of guilt on the August

25  16, 1995 RVR.  (FAC, p. 4.)

26     Because of the issuance of the false RVR, Plaintiff alleges he was unjustly placed in Ad-Seg and

27  COR-SHU for 288 days.  (FAC, p. 4.)  Plaintiff alleges that while on his way to the Calipatria Ad-Seg

28  exercise yard on November 4, 1995, he was attacked and assaulted by two inmates "who harbor hate for

1 | all African-American [sic] and who did regularly attack them as they tried to get their yard time."

2 | (FAC, p. 5.)  Plaintiff claims in the First Amended Complaint that Defendant Prunty knowingly

3 | assigned him to the hostile Ad-Seg yard.  (FAC, p. 5.)  Plaintiff further alleges that he lost 150 days of

4 | good-time credits toward the reduction of his sentence.  (FAC, p. 5.)

5 |      Finally, Plaintiff alleges that, as a result of the false RVR which labeled him as a staff assaulter,

6 | he was assaulted by unidentified officers at the Security Housing Unit of Corcoran State Prison on

7 | November 22, 1995, "causing the scraping of his skin off the top of his left foot and excruciating pain in

8 | his back for several weeks." (FAC, p. 5.)

9 | **III.**

10 | **ARGUMENTS**

11 |      **A.    Plaintiff's Arguments**

12 |      The First Amended Complaint alleges that Plaintiff's civil rights were violated when, in

13 | retaliation for filing an inmate grievance form in June of 1995, a false RVR was issued against him and

14 | he was moved from the CAL-IV general population to Ad-Seg as a result.  (FAC. at p. 2.)  Plaintiff

15 | contends that Defendants collectively conspired to find him guilty of a false rules violation, which was

16 | later dismissed by the California Court of Appeals.  (FAC at p. 4.)  Plaintiff seeks damages, compensa-

17 | tory and punitive, as a result of the allegedly unconstitutional treatment he received from Defendants.

18 |      **B.    Defendants' Arguments**

19 |      Defendants Salas and Davis move to Dismiss Plaintiff's First Amended Complaint pursuant to

20 | FED.R.CIV.P. 12(b)(6) on the grounds that: (1) Salas and Davis are entitled to sovereign immunity when

21 | sued in their official capacities; (2)  Plaintiff has failed to state a cognizable retaliation claim against

22 | Salas and Davis; (3) Plaintiff has failed to state a valid due process claim; (4) Plaintiff's deliberate

23 | indifference claim is barred by the statute of limitations; and (5) Salas and Davis are entitled to qualified

24 | immunity.  Salas and Davis also move to strike Plaintiff's prayer for punitive damages.

25 |      Defendant Prunty moves for Judgment on the Pleadings on the grounds that: (1) Prunty is also

26 | entitled to sovereign immunity because he has been sued in his official capacity; (2)  Plaintiff has failed

27 | to state a cognizable retaliation claim against Prunty; (3) *respondeat superior* is not a basis for liability

28 | against Prunty; (4) Plaintiff has failed to state a valid due process claim; (5) Plaintiff's deliberate

4

1  indifference claim is barred by the statute of limitations; and (6) Prunty is entitled to qualified immunity.

2  Prunty also moves to strike Plaintiff's prayer for punitive damages.

3       For the reasons stated below, it is recommended that the Court: (1) **GRANT IN PART AND**

4  **DENY IN PART** Defendants Salas and Davis' Motion to Dismiss (without prejudice and with leave for

5  Plaintiff to amend within a time certain.); and (2) **GRANT IN PART AND DENY IN PART** Defen-

6  dant's Prunty's Motion for Judgment on the Pleadings.

7  **IV.**

8  **APPLICABLE LEGAL STANDARDS**

9      **A.**    **Motion to Dismiss**

10       Only Defendants Salas and Davis have filed a motion to dismiss Plaintiff's First Amended

11  Complaint. A motion to dismiss for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6) tests the

12  legal sufficiency of the claims in the complaint. A complaint can be dismissed only if it "appears

13  beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to

14  relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hishon v. King & Spalding, 467 U.S. 69,

15  73 (1984). The court must accept as true all material allegations in the complaint, as well as reasonable

16  inferences to be drawn from them, and must construe the pleading in the light most favorable to the

17  plaintiff. NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); Parks School of Business,

18  Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

19       Unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his

20  claim, a complaint shall not be dismissed without leave to amend. Conley, 355 U.S. at 45-46. Where a

21  plaintiff appears in *propria persona* in a civil rights case, the court must construe the pleadings liberally

22  and afford the plaintiff any benefit of the doubt. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d

23  621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases."

24  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil

25  rights complaint, however, the court may not "supply essential elements of the claim that were not

26  initially pled." Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

27  ///

28  ///

5

1       **B.      Motion for Judgment on the Pleadings**

2       Federal Rule of Civil Procedure 12(c) provides: "[a]fter the pleadings are closed but within such

3   time as not to delay the trial, any party may move for judgment on the pleadings."  Defendant Prunty

4   filed an answer to Plaintiff's FAC on August 9, 2005.  Accordingly, the pleadings are closed with

5   respect to Defendant Prunty and he may properly bring a motion for judgment on the pleadings.

6       Judgment on the pleadings is proper when the moving party clearly establishes on the face of the

7   pleadings that no material issue of fact remains to be resolved.  FED.R.CIV.P. 12(c); Hal Roach Studios,

8   Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1550 (9th Cir. 1990).

9       "A judgment on the pleadings is properly granted when, taking all the allegations in the pleading

10  as true, the moving parties are entitled to judgment as a matter of law."  Smith v. National Steel &

11  Shipbuilding Co., 125 F.3d 751, 753 (9th Cir. 1997); George v. Pacific-CSC Work Furlough, 91 F.3d

12  1227, 1229 (9th Cir. 1996) (citing Yanez v. United States, 63 F.3d 870, 872 (9th Cir. 1995)).  Judgment

13  on the pleadings is improper when the court must go beyond the pleadings to resolve an issue; if the

14  court does so, such a proceeding must properly be treated as a motion for summary judgment.  See

15  FED.R.CIV.P. 12(c); Hal Roach Studios, Inc, 896 F.2d at 1550.

16  **C.      Motion to Strike**

17      Defendants Salas, Davis and Prunty also make a motion to strike Plaintiff's prayer for punitive

18  damages.  Motions to strike are generally disfavored.  Cairns v. Franklin Mint Co., 24 F. Supp. 2d 1013,

19  1037 (C.D. Cal. 1998).  Under Rule 12(f), a party may move to strike "from any pleading any insuffi-

20  cient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED.R.CIV.P. 12(f).

21  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise

22  from litigating spurious issues by dispensing with those issues prior to trial."  Sidney-Vinstein v. A.H.

23  Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  "'Immaterial matter' is that which has no essential or

24  important relationship to the claim for relief or the defenses being pleaded . . . . 'Impertinent' matter

25  consists of statements that do not pertain, and are not necessary, to the issues in question."  Fantasy, Inc.

26  v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994).

27  ///

28  ///

1

**V.**

2

**DISCUSSION**

3

**A.      Eleventh Amendment Immunity For Official Acts**

4
Defendants Salas, Davis and Prunty seek dismissal of Plaintiff's damages claims to the extent

5
they are based on acts taken in their official capacities.  While the Eleventh Amendment bars a

6
prisoner's section 1983 claims against state actors sued in their official capacities, Will v. Michigan, 491

7
U.S. 58, 66 (1989), it does not bar damage actions against state officials in their personal or individual

8
capacities.  Hafer v. Melo, 502 U.S. 21, 31 (1991); Pena v. Gardner, 976 F.2d 469, 472-73 (9th Cir.

9
1992).  When a state actor is alleged to have violated both federal and state law and is sued for damages

10
under section 1983 in his individual or personal capacity, there is no Eleventh Amendment bar, even if

11
state law provides for indemnification.  Ashker v. California Department of Corrections, 112 F.3d 392,

12
395 (9th Cir. 1997).

13
Here, Plaintiff clearly indicates an intent to sue all Defendants in both their individual and

14
official capacities.  (FAC at p. 2.)  Thus, it is recommended that the Court: (1) **GRANT** Defendants

15
Salas and Davis' Motion to Dismiss on Eleventh Amendment grounds *only to the extent* that Plaintiff

16
seeks damages against them in their official capacities; and (2) **GRANT** Defendant Prunty's Motion for

17
Judgment on the Pleadings on Eleventh Amendment grounds *only to the extent* that Plaintiff seeks

18
damages against him in his official capacity.

19

**B.      Plaintiff's First Amendment Retaliation Claim**

20
A plaintiff may bring a claim of retaliation for the exercise of his First Amendment rights under

21
42 U.S.C. § 1983.  Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). "A prisoner

22
suing prison officials under section 1983 for retaliation must allege that he was retaliated against for

23
exercising his constitutional rights and that the retaliatory action does not advance legitimate penologi-

24
cal goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16

25
(9th Cir. 1994) (per curiam).  Accordingly, a prisoner retains those First Amendment rights that are "not

26
inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections

27
system." Prison Legal News v. Cook, 238 F.3d 1145, 1149 (9th Cir.2001) (internal quotation marks and

28
citation omitted).

1    Plaintiff claims Defendants violated his constitutional rights by issuing and acting upon a false

2 Rules Violation Report in retaliation against him for filing an inmate grievance form on June 21, 1995.

3 (FAC, pp. 2-4)  The Constitution provides protections against "deliberate retaliation" by prison officials

4 against an inmate's exercise of his right to petition for redress of grievances.  Sorrano's Gasco, Inc. v.

5 Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Because retaliation by prison officials may chill an

6 inmate's exercise of his legitimate First Amendment rights, such conduct is actionable even if it would

7 not otherwise rise to the level of a constitutional violation.  Thomas v. Carpenter, 881 F.2d 828, 830 (9th

8 Cir. 1989), cert. denied, 497 U.S. 1003 (1990).  However,  there must be a causal connection between

9 the allegedly retaliatory conduct and the action that purportedly provoked the retaliation.  In fact, a

10 plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defen-

11 dant's decision to act.  Sorranno's Gasco, 874 F.2d at 1314; Mt. Healthy City School Dist. Bd. of Educ.

12 v. Doyle, 429 U.S. 274, 287 (1977).

13    Thus, in order to survive a motion to dismiss, a plaintiff suing prison officials under § 1983 for

14 retaliation must allege: (1)  he was retaliated against for exercising his constitutional rights, and (2) the

15 retaliatory action "does not advance legitimate penological goals, such as preserving institutional order

16 and discipline."  Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).

17    Defendants argue that Plaintiff had no standing to file an inmate grievance form on June 21,

18 1995 because Plaintiff either: (1) lodged the inmate grievance form, not on his behalf, but on behalf of

19 other African-American inmates who were transferred from the Cal-IV general population to the

20 California State Prison in Corcoran, or (2) that Plaintiff lodged the inmate grievance form prematurely

21 on his own behalf in order to preemptively prevent his transfer from the Cal-IV general population.

22 (Defendants' Mtn. to Dismiss, pp. 8-9.)  While Plaintiff's standing to submit the June 21, 1995 inmate

23 grievance form is questionable under the pertinent California Code of Regulations, Calipatria State

24 Prison's acceptance of Plaintiff's June 1995 grievance form is not in question.  There are no allegations,

25 nor is there any admissible evidence, that Plaintiff's inmate grievance form was rejected by Calipatria

26 State Prison for lack of standing, therefore Defendants have waived their ability to challenge, 11 years

27 later, Plaintiff's submission of the June 1995 inmate grievance form.   It is clear from Plaintiff's FAC

28 that by lodging the inmate grievance with the prison, Plaintiff sought to, and did, exercise his First

1  Amendment rights.  See Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005) ("Of fundamental import

2  to prisoners are their First Amendment 'right to file prison grievances,' and 'to pursue civil rights

3  litigation in the courts.'")

4          Defendants also argue that Plaintiff has failed to demonstrate that the false RVR issued in

5  August 1995 had a retaliatory connection to Plaintiff's inmate grievance form, which was filed in June

6  of 1995.  However, construing the FAC in the light most favorable to Plaintiff, Plaintiff has alleged a

7  connection between the June 1995 inmate grievance form and the August 1995 RVR.

8          Specifically, Plaintiff alleges that "on 8-16-1995 one of two Investigative Services Unit (ISU)

9  officers approached plaintiff to escort him to Ad-Seg and in response to plaintiff's question of 'Why was

10  he being lock up [sic]?' to which the officer replied you need to learn to do your own time'."  (FAC, p.

11  3.) It can be inferred from the comment of the unidentified ISU officer that Plaintiff was being placed in

12  Ad-Seg in order "to do his own time" - i.e. stop filing inmate grievance forms on behalf of himself

13  and/or others similarly situated.  Plaintiff also alleges that Defendant Salas issued the false RVR on the

14  same day (August 16, 1995) the two ISU officers escorted him to Ad-Seg.  (FAC, p.4, referring to the

15  Salas 8-16-95 RVR-115.)   It can be inferred from these allegations that the false RVR was a pretext for

16  removing Plaintiff from the general population to Ad-Seg.  Accordingly, Plaintiff has sufficiently

17  alleged facts in support of his claim that he was retaliated against for exercising his constitutional rights,

18  and that the retaliatory action did not advance legitimate penological goals.  It is, therefore, recom-

19  mended that the Court **DENY** the motion to dismiss plaintiff's retaliation claim as to Defendant Salas.

20          Plaintiff makes no allegations to show Defendant Davis' involvement in the issuance of the

21  allegedly retaliatory RVR.  A person deprives another "of a constitutional right, within the meaning of

22  section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform

23  an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]."

24  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  "Causation is, of course, a required element of a §

25  1983 claim." Estate v. Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir. 1999).  The inquiry into

26  causation must be individualized and focus on the duties and responsibilities of each individual

27  defendant whose acts or omissions are alleged to have caused a constitutional deprivation.  See Rizzo v.

28

1    Goode, 423 U.S. 362, 370-71 (1976); Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988); Berg v.

2    Kincheloe, 794 F.2d 457, 460 (9th Cir. 1986).

3         Plaintiff alleges only that Defendant Davis found him guilty as charged at his October 28, 1995

4    disciplinary hearing based on the June 1995 RVR.  (FAC, p. 4.)  Plaintiff fails to allege any facts

5    demonstrating that Defendant Davis was involved in drafting the false RVR, or would have known at

6    the time the RVR was issued that it was false.  It is, therefore, recommended that the Court **GRANT** the

7    motion to dismiss plaintiff's retaliation claim as to Defendant Davis.

8         **C.      No *Respondeat Superior* Liability Under 42 U.S.C. § 1983**

9         Defendant Warden Prunty moves for judgment on the pleadings on the ground that Plaintiff

10   failed to show an action by him that caused an alleged deprivation of Plaintiff's constitutional rights.

11   There is no *respondeat superior* liability under 42 U.S.C. § 1983.  Palmer v. Sanderson, 9 F.3d 1433,

12   1437-38 (9th Cir. 1993).  Thus, to avoid the *respondeat superior* bar, the plaintiff must allege personal

13   acts by Warden Prunty which have a direct causal connection to the constitutional violation at issue.

14   Sanders v. Kennedy, 794 F.2d 478, 483 (9th Cir. 1986).  As discussed above, Section 1983 provides for

15   relief only against those who, through their personal involvement as evidenced by affirmative acts,

16   participation in another's affirmative acts, or failure to perform legally required duties, cause the

17   deprivation of the plaintiff's constitutionally protected rights.  Johnson, supra, 588 F.2d at 743.

18        Plaintiff has alleged no facts to show acts by Warden Prunty that have a direct causal connection

19   to the allegedly retaliatory RVR.  In his complaint, Plaintiff identifies Prunty as the Warden of

20   Calipatria and claims he "had the authority and duty to stop [constitutional violations of plaintiff's

21   rights]."  (FAC at p. 2)  Plaintiff also alleges that he informed Prunty on August 24, 1995, after the

22   RVR's issuance on August 16, 1995, that it was false.  (FAC, p. 4.)  However, Plaintiff has failed to

23   allege how Warden Prunty would have been involved in drafting the false RVR, or would have known

24   at the time of its issuance that the RVR was false.  Assuming all the allegations in Plaintiff's pleading as

25   true, Warden Prunty is entitled to judgment as a matter of law.  See Hal Roach Studios, supra, 896 F.2d

26   at 1550; Smith, supra, 125 F.3d at 753.  Accordingly, it is recommended that the Court **GRANT**

27   Defendant Prunty's Motion for Judgment on the Pleadings as to Plaintiff's retaliation claim, and dismiss

28   Plaintiff's retaliation claim against Warden Prunty *with prejudice*.

1  **D. Plaintiff's Fourteenth Amendment Claims - Due Process**

2      **1. Placement in Ad-Seg and COR-SHU**

3      Plaintiff argues that serving unnecessary time in Ad-Seg and COR-SHU violated  his due

4  process rights.  (FAC, p. 4.)  However, an inmate has no right to be free from administrative segregation

5  or to be housed with the general prison population.  See Sandin v. Conner, 515 U.S. 472, 483 (1995);

6  Grayson v. Rison, 945 F.2d 1064, 1067 (9th Cir. 1991).  In Sandin, the Supreme Court held that an

7  inmate has a state-created liberty interest protected by the Due Process Clause only where the restraint

8  "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

9  life." Id.

10      The Ninth Circuit has also held that the Constitution provides no liberty interest to be free from

11  administrative segregation.  Smith v. Noonan, 992 F. 2d. 987, 989 (9th Cir. 1993).  Only the law of the

12  state in which the inmate is confined may create such an interest.  California law does not recognize a

13  liberty interest to be free from administrative segregation.  California Code of Regulations, Title 15,

14  Section 3341.5(B)(1) (a determinate period of confinement . . .may be established for an inmate found

15  guilty of a serious offense).  California regulations  provide, "[a]n inmate shall not be retained beyond

16  the expiration of a determinate term or beyond 11 months, unless the classification committee has

17  determined an extension is warranted."  CCR, Title 15, Section 3341.5(B)(3).

18      Furthermore, the United States Supreme Court has stated that being housed in Ad-Seg does not

19  impose an atypical and significant hardship on prisoners in relation to the ordinary incidents of prison

20  life and thus does not necessarily implicate the due process clause of the Constitution. Sandin v. Conner,

21  515 U.S. 472 (1995) (30 days in disciplinary segregation did not implicate a prisoner's due process

22  rights).

23      In sum, because Plaintiff has no constitutional or state-created liberty interest in prison housing,

24  Plaintiff fails to state a claim that his due process rights were violated when he was placed in Ad-Seg

25  and COR-SHU confinement.   It is, therefore, recommended that the Court **GRAN**T Defendants Salas

26  and Davis' motion to dismiss plaintiff's due process claim for his placement in Ad-Seg and COR-SHU

27  *with prejudice*.

28  ///

1   It is further recommended that the Court **GRANT** Defendant Prunty's motion for judgment on

2   the pleadings as to plaintiff's due process claim stemming from his confinement in Ad-Seg and COR-

3   SHU *with prejudice*.

4   **2. Plaintiff's Actual Loss of Good-Time Credits**

5   Plaintiff also argues that his due process rights were violated when he lost 150 days of good-time

6   credits toward the reduction of his sentence. (FAC, p. 5.) Due process requires procedural protections

7   before a prison inmate can be deprived of a protected liberty interest such as good-time credits. Wolff

8   v. McDonnell 418 U.S. 539, 556-557 (1974). Because Plaintiff alleges he was actually deprived of 150

9   days of good-time credits in conjunction with the November 2, 1995 hearing before the ICC, he was

10   entitled to the procedural protections of due process during that hearing.

11   Due process requires that a finding of guilt at a disciplinary hearing be based upon sufficient and

12   reliable evidence. Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985); Cato v.

13   Rushen, 824 F.2d 703, 704-705 (9th Cir. 1987.) Plaintiff's First Amended Complaint contains several

14   allegations regarding the falsity of the August 1995 RVR upon which his loss of good-time credits was

15   based. Specifically, Plaintiff alleges that he "wrote defendant Prunty and explained how the RVR-115

16   submitted to him was an fabrication and beg him to investigate it and relelase plaintiff from Ad-Seg."

17   (FAC, p. 4.) Plaintiff further alleges that he "defended the charge [as detailed in the June 16, 1995

18   RVR] with factual evidence of his innocence. This defendant [J.W. Davis] ignored this evidence and

19   thereafter found plaintiff guilty as charged." (FAC, p. 4.)

20   From these allegations, it is clear that Plaintiff sets forth a cognizable claim for the loss of a

21   liberty interest and is challenging the sufficiency of the evidence that served as a basis for that loss.

22   (FAC, p. 4.) It is, therefore, recommended that the Court **DENY** Defendants Salas and Davis' motion to

23   dismiss plaintiff's due process claim for loss of good-time credits. It is further recommended that the

24   Court **DENY** Defendant Prunty's motion for judgment on the pleadings as to plaintiff's due process

25   claim for loss of good-time credits. Prunty has not clearly established through reference to the pleadings

26   that no material issue of fact remains to be resolved with respect to the sufficiency or reliability of the

27   evidence upon which the decision to penalize Plaintiff with a loss of good-time credits was made.

28   ///

12

1      **E.  Eighth Amendment**

2          **1.  Placement in Ad-Seg and SHU**

3      Mere inconvenience and discomfort caused by segregation do not rise to the level of an Eighth

4  Amendment violation.  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981).  Indeed, placement in adminis-

5  trative segregation, without more, does not constitute a violation of the Eighth Amendment.  <u>See</u>

6  <u>Toussaint v. Yockey</u>, 722 F.2d 1490, 1494 n. 6 (9th Cir. 1984) (noting that more than the usual hardships

7  associated with administrative segregation are required to state an Eighth Amendment claim.)

8      Here, Plaintiff fails to allege any facts demonstrating that his confinement in Ad-Seg or SHU

9  presented any discomfort above and beyond that typically encountered in administrative segregation.

10  <u>See</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992) ("Because routine discomfort is part of the penalty that

11  criminal offenders pay for their offenses against society, only those deprivations denying the minimal

12  civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment

13  violation.")  Therefore, it is recommended that the Court **GRANT** Defendants Salas and Davis' motion

14  to dismiss plaintiff's Eighth Amendment claim as to his placement in administrative segregation.

15      Taking all the allegations in Plaintiff's pleading as true, Defendant Prunty is entitled to

16  judgment as a matter of law.  As explained above, simple confinement in administrative segregation,

17  without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment.

18  Accordingly, it is also recommended that the Court **GRANT** Defendant Prunty's motion for judgment

19  on the pleadings with respect to plaintiff's Eighth Amendment claim stemming from his placement in

20  administrative segregation *with prejudice*.

21          **2.  Plaintiff's Failure to Protect Claim**

22      Plaintiff alleges that on his way to the Calipatria Ad-Seg exercise yard on November 4, 1995, he

23  was assaulted by two inmates "who harbor hate for all African-American [sic] and who did regularly

24  attack them as they tried to get their yard time."  (FAC, p. 5.)  Plaintiff also alleges that he was assaulted

25  by unidentified officers at the Security Housing Unit of Corcoran State Prison on November 22, 1995,

26  "causing the scraping of his skin off the top of his left foot and excruciating pain in his back for several

27  weeks." (FAC, p. 5.)

28

04CV1761 LAB (WMc)

1    Section 1983 actions are governed by the state statute of limitations for personal injury actions.

2    See Azer v. Connell, 306, F.3d 930, 935 (9th Cir. 2002).  At the time that Plaintiff's failure to protect

3    claims arose on November 4,1995 and November 22, 1995, California's applicable personal injury

4    statute of limitations was one year.  See Cal. Civ. Proc. Code § 340(3).  Because Plaintiff was, and is,

5    incarcerated, he is entitled to a tolling of his personal injury claims.  The forum state's law on tolling is

6    applied when not inconsistent with federal law.  See Hardin v. Straub, 490 U.S. 536, 537-39; Bacon v.

7    City of Los Angeles, 843 F.2d 372, 374 (9th Cir. 1988).   Accordingly, in 1995, California's tolling period

8    for state prisoners was two years.  See Cal. Civ. Proc. Code § 352.1; Jones v. Blanas, 393 F.3d 918 (9th

9    Cir. 2000).

10    As noted above, Plaintiff was aware on November 4, 1995 and November 22, 1995 that he

11    sustained injuries in the Calipatria Ad-Seg exercise yard and upon arrival at COR-SHU.  Under the

12    applicable statute of limitations and tolling periods, Plaintiff had until November 1998 to bring his failure

13    to protect claims.  Plaintiff failed to file a complaint as to those claims within that time period and is,

14    therefore, barred from raising those claims six years later in his December 14, 2004 complaint.

15    Assuming *arguendo* that Plaintiff's personal injury claims were not barred by the statute of

16    limitations, Plaintiff still fails to allege any facts showing how Defendant Prunty or any of the other

17    defendants could have been aware that a substantial risk of an attack on Plaintiff may have existed from

18    either Plaintiff's use of the Ad-Seg exercise yard or upon his exit from the transportation bus to COR-

19    SHU, where Plaintiff was subsequently transferred.  The Eighth Amendment is violated for failure to

20    protect only when the following objective and subjective requirements have been met: (1) that the

21    deprivation alleged is sufficiently serious; and (2) that the prison official is deliberately indifferent to the

22    prisoner's safety.  Farmer v. Brennan, 511 U.S. 825, 833 (1994).  As explained above, Plaintiff has not

23    made this showing.

24    Accordingly, it is recommended that the Court **GRANT** Defendants Salas and Davis' motion to

25    dismiss plaintiff's Eighth Amendment claim *with prejudice*.  It is further recommended that the Court

26    **GRANT** Defendant Prunty's motion for judgment on the pleadings as to plaintiff's Eighth Amendment

27    claim *with prejudice*.

28    ///

04CV1761 LAB (WMc)

1      **G. Qualified Immunity**

2      Defendants argue they are entitled to qualified immunity for their conduct related to the August

3 16, 1995 RVR. Qualified immunity is an affirmative defense. <u>Groten v. California</u>, 251 F.3d 844, 851

4 (9th Cir. 2001). The entitlement to qualified immunity "is an immunity from suit rather than a mere

5 defense to liability." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985). The defense of "qualified immunity"

6 protects "government officials . . . from liability for civil damages insofar as their conduct does not

7 violate clearly established statutory or constitutional rights of which a reasonable person would have

8 known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

9      Defendants Salas and Davis have moved to dismiss under Fed.R.Civ.P. 12(b)(6). Thus, this Court

10 can only grant qualified immunity if the facts set forth in the complaint establish Defendants' entitlement

11 to qualified immunity. <u>See</u> <u>Morley v. Walker</u>, 175 F.3d 756, 761 (9th Cir. 1999). "If no constitutional

12 right would have been violated were the allegations established, there is no necessity for further inquiries

13 concerning qualified immunity." <u>Haynie v. County of Los Angeles</u>, 339 F.3d 1071, 1078 (9th Cir. 2003).

14

15      In this case, Plaintiff has set forth a retaliation claim as to Defendant Salas. Plaintiff has alleged

16 that the false August 1995 RVR was a pretext for his alleged retaliatory removal from the general

17 population to Ad-Seg. Accepting those allegations as true, which the Court must do, Plaintiff has

18 asserted a claim for a violation of his First Amendment rights. Therefore, Defendant Salas is not entitled

19 to qualified immunity on the current motion. <u>Morely v. Walker</u>, 175 F.3d at 761 (noting that the issue of

20 qualified immunity is more properly raised by summary judgment). Therefore, it is recommended that

21 Defendant Salas' motion to dismiss based upon qualified immunity be **DENIED**.

22      As to Defendants Davis and Prunty, Plaintiff has sufficiently alleged the loss of a liberty interest

23 in his good-time credits and is challenging the sufficiency of the evidence that served as a basis for that

24 loss. Because Plaintiff has set forth a claim for violation of his right to due process against Defendants

25 Davis and Prunty, it is recommended that Defendant Davis' motion to dismiss based upon qualified

26 immunity be **DENIED** and it is further recommended that Defendant Prunty's motion for judgment on

27 the pleadings as to qualified immunity also be **DENIED.**

28 ///

                                             

1     **H.  Punitive Damages**

2     Defendants Salas, Davis and Prunty argue that Plaintiff's claim for punitive damages under

3 Section1983 should be dismissed because Plaintiff fails to plead sufficient facts to support claims of

4 malice against them.  Punitive damages are proper under Section 1983 when a defendant's conduct was

5 driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional

6 rights of others.  Smith v. Wade, 461 U.S. 30, 56 (1983); Dubner v. City and County of San Francisco,

7 266 F.3d 959, 969 (9th Cir. 2001).

8     As to Defendants Davis and Prunty, Plaintiff has not set forth any facts regarding the defendants'

9 evil motive or intent, nor has he alleged that Defendants Davis and Prunty acted recklessly or with

10 indifference to his federally protected rights.  Plaintiff's blanket prayer for punitive damages against all

11 the defendants has no relationship to the various claims alleged against each of them, in particular

12 Defendants Davis and Prunty.  It is, therefore, recommended that the Court **GRANT** the motion to strike

13 Plaintiff's prayer for punitive damages *only to the extent* it pertains to Defendants Davis and Prunty.

14     With respect to Defendant Salas, Plaintiff alleges that Salas "knowingly filed a false disciplinary

15 report against plaintiff" and further alleges that "infact [sic] the RVR-115 was made up by Salas from

16 whole clothe [sic] and rubber stamped with the name of one of several of their inmate agents a practice

17 and pattern often use [sic] against targeted inmates in CDC."  [FAC, p. 3]  Plaintiff's allegations as to

18 Defendant Salas are sufficient to infer malice.  See Fed. R. Civ, P. 9(b).  Whether Defendant Salas acted

19 with malice is a question of fact not properly determined on a motion to strike.  Accordingly, it is

20 recommended that the Court **DENY** the motion to strike Plaintiff's prayer for punitive damages *only to*

21 *the extent* it pertains to Defendant Salas.

22                                       **VI.**

23         **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**

24     Defendants request the Court take judicial notice of various documents they have submitted in

25 support of their filings.  Judicial Notice is governed by Federal Rule of Evidence 201 which governs only

26 judicial notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable

27 dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2)

28 capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

             04CV1761 LAB (WMc)

1  questioned." FRE 201.        In other words, "the fact must be one that only an unreasonable person

2  would insist on disputing." United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994).

3        Documents that are part of the public record may be judicially noticed to show, for example, that

4  a judicial proceeding occurred or that a document was filed in another court case, but a court may not

5  take judicial notice of findings of facts from another case. See Wyatt v. Terhune, 315 F.3d 1108, 1114 &

6  n. 5 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 698 (9th Cir. 2001).  Nor may the court

7  take judicial notice of any matter that is in dispute. Lee, 250 F.3d at 689-90.

8        Defendants ask the Court to take judicial notice of: "[Exhibit] A- Unpublished opinion of the

9  California Court of Appeals, Fourth Appellate District, Division One, In re MARCUS PLAYER on

10  Habeas Corpus, decided on April 30, 2004, and printed from Lexis services; [Exhibit] B - General chrono

11  drafted by Defendant Prunty, dated April 12, 1996, and provided by the litigation staff at Kern Valley

12  State Prison; [and Exhibit] C - California Code of Regulations, Title 15, sections 3084.1 through 3084.3,

13  updated through September 10, 1995." (Defendants' Request for Judicial Notice, p.2.)

14        The Court may take judicial notice of another court's opinion "not for the truth of the facts recited

15  therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authentic-

16  ity." Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) citing Southern Cross Overseas

17  Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410-426-27 (3rd Cir. 1999).  The Court may

18  also take judicial notice of state regulations which are readily ascertainable. See Roemer v. Board of

19  Public Works of Maryland, 426 U.S. 736, 742 n. 4 (1976).

20        Accordingly, it is recommended that the Court **GRANT** Defendants' request to take judicial

21  notice of: (1) Defendants' Exhibit A, the unpublished opinion entitled In re MARCUS PLAYER on

22  Habeas Corpus, but not for the truth of its contents; and (2) Defendants' Exhibit  C, California Code of

23  Regulations sections 3084.1 through 3084.3.

24        As to the Defendants' Exhibit B - the April 12, 1995 general chronology the Court is aware of no

25  basis for this document to be judicially noticed and therefore it is recommended that Defendants' Request

26  for Judicial Notice of Exhibit B be **DENIED**.

27  ///

28  ///

17                                                    04CV1761 LAB (WMc)

**VII.**

**CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order:

(1) **DENYING** the motion to dismiss plaintiff's retaliation claim as to Defendant Salas;

(2) **GRANTING** the motion to dismiss plaintiff's retaliation claim as to Defendant Davis with leave to amend;

(3) **GRANTING** Defendant Prunty's Motion for Judgment on the Pleadings as to Plaintiff's retaliation claim, and dismiss Plaintiff's retaliation claim against Warden Prunty *with prejudice*;

(4) **GRANTING** Defendants Salas and Davis' motion to dismiss plaintiff's due process claim for his placement in Ad-Seg and SHU and dismiss Plaintiff's due process claim *with prejudice*;

(5) **GRANTING** Defendant Prunty's motion for judgment on the pleadings as to plaintiff's due process claim stemming from his confinement in Ad-Seg and SHU and dismiss Plaintiff's due process claim against Warden Prunty *with prejudice*;

(6) **DENYING** Defendants Salas and Davis' motion to dismiss plaintiff's due process claim for loss of good-time credits;

(7) **DENYING** Defendant Prunty's motion for judgment on the pleadings as to plaintiff's due process claim for loss of good-time credits;

(8) **GRANTING** Defendants Salas and Davis' motion to dismiss plaintiff's Eighth Amendment claim as to his placement in administrative segregation and dismiss Plaintiff's claim for placement in Ad-Seg *with prejudice*;

(9) **GRANTING** Defendant Prunty's motion for judgment on the pleadings with respect to plaintiff's Eighth Amendment claim stemming from his placement in administrative segregation and dismiss Plaintiff's claim for placement in Ad-Seg *with prejudice*;

(10) **GRANTING** Defendants Salas and Davis' motion to dismiss plaintiff's Eighth Amendment claim for failure to protect and dismiss Plaintiff's failure to protect claim *with prejudice*;

(11) **GRANTING** Defendant Prunty's motion for judgment on the pleadings as to plaintiff's Eighth Amendment claim for failure to protect and dismiss Plaintiff's failure to protect claim *with prejudice*;

(12) **DENYING** Defendant Salas' motion to dismiss based upon qualified immunity;

04CV1761 LAB (WMc)

1    (13) **DENYING** Defendant Davis' motion to dismiss based upon qualified immunity;

2    (14) **DENYING** Defendant Prunty's motion for judgment on the pleadings as to qualified immunity;

3    (15) **GRANTING** the motion to strike Plaintiff's prayer for punitive damages *only to the extent* it

4    pertains to Defendants Davis and Prunty;

5    (16) **DENYING** the motion to strike Plaintiff's prayer for punitive damages *only to the extent* it

6    pertains to Defendant Salas;

7    (17) **GRANTING** Defendants' request to take judicial notice of: (a) Defendants' Exhibit A, the

8    unpublished opinion entitled In re MARCUS PLAYER on Habeas Corpus, but not for the truth of its

9    contents; and (b) Defendants' Exhibit C, California Code of Regulations sections 3084.1 through 3084.3.

10    (18) **DENYING** Defendants' request to take judicial notice of Exhibit B - the April 12, 1995 general

11    chrono.

12    **IT IS ORDERED** that no later than **December 6, 2006**, any party to this action may file written

13    objections with the Court and serve a copy on all parties.  The document should be captioned "Objections

14    to Report and Recommendation."

15    **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the court and

16    served on all parties no later than **December 20, 2006**.  The parties are advised that failure to file

17    objections within the specified time may result in waiver of the right to raise those objections on appeal

18    of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); see also Martinez v. Ylst,

19    951 F.2d 1153, 1156 (9th Cir. 1991).

20    **IT IS SO ORDERED**.

21    Dated:  November 8, 2006

22

23    Hon. William McCurine, Jr.
      U.S. Magistrate Judge

24    United States District Court

25    Copy to:

26    HONORABLE LARRY A. BURNS, UNITED STATES DISTRICT JUDGE
      ALL COUNSEL OF RECORD

27    PETITIONER *PRO SE*

28

04CV1761 LAB (WMc)