UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS PLAYER,<br><br>  Plaintiff,<br><br> vs.<br><br><br>G. SALAS; K.W. PRUNTY; B.L. REED;<br>J.W. DAVIS; and DOES 1-10, inclusive,<br><br>  Defendants. | CASE NO. 04cv1761-LAB (WMc)<br><br>**ORDER**<br><br>**1) ADOPTING REPORT AND RECOMMENDATION; AND**<br><br>**2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND**<br><br>**3) DISMISSING ACTION** |

**I.  Procedural History**

Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis* filed his complaint on August 31, 2004, seeking relief pursuant to 42 U.S.C. § 1983. Plaintiff amended his complaint on December 14, 2004, alleging that Defendant Salas submitted a false disciplinary report in retaliation for Plaintiff's having filed a grievance. Plaintiff alleged that, as a result, a series of proceedings were held, resulting in, among other things, his being held in administrative segregation and losing good-time credits.

This matter was referred to Magistrate Judge William McCurine, Jr. for a report and recommendation pursuant to 28 U.S.C. § 636. Judge McCurine issued his first report and recommendation on October 20, 2005, which the Court adopted in part and rejected in part on February 23, 2006. Defendants then on August 18, 2006 moved to dismiss and to strike, and these

1  motions were referred to Judge McCurine for report and recommendation. Judge McCurine issued
2  his report and recommendation on November 8, 2006, which the Court adopted as modified on March
3  22, 2007. As part of its order adopting this report and recommendation, the Court ordered Plaintiff
4  to show cause why, in view of the fact that his good-time credits had been restored, his due process
5  claim should not be dismissed as moot. Plaintiff was given leave to amend his complaint further, but
6  he did not do so within the time permitted. He did, however, file a memorandum of points and
7  authorities to show cause why his due process claim should not be dismissed.

8  Plaintiff's claim that Defendant Salas retaliated against him for having filed a grievance, and
9  Plaintiff's claims that Defendants Salas, Davis, and Prunty for loss of good-time credits survive.
10 Plaintiff's remaining claims have been dismissed. Defendants then moved for summary judgment
11 as to these remaining claims, which Plaintiff opposed. Defendants requested dismissal of all claims,
12 and of this action in its entirety. The motion was again referred to Judge McCurine for report and
13 recommendation. On August 7, 2007, Judge McCurine issued his report and recommendation (the
14 "R&R"), recommending that the Defendants' motion be granted. On August 24, 2007, Plaintiff filed
15 objections to the R&R. On September 14, Defendant replied to Plaintiff's objections.

16 **II.    Legal Standards**

17 The district court has jurisdiction to review the Magistrate Judge's report and recommendation
18 concerning a dispositive pretrial motion. Fed. R. Civ. P. 72(b). "The district judge to whom the case
19 is assigned shall make a de novo determination upon the record, or after additional evidence, of any
20 portion of the magistrate judge's disposition to which specific written objection has been made in
21 accordance with this rule." *Id.*; *see also* 28 U.S.C. § 636(b)(1). "A judge of the court may accept,
22 reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."
23 28 U.S.C. § 636(b)(1). Thus, the district court judge reviews those parts of the report and
24 recommendation to which a party has filed a written objection. *United States v. Reyna-Tapia*, 328
25 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

26 Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on
27 factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive
28 determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary

judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

The movant is not required to produce evidence showing the absence of a genuine issue of material fact, nor is he required to offer evidence negating the non-movant's claims. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

The "mere existence of a scintilla of evidence" in support of the non-moving party's position is not sufficient to withstand summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Accordingly, the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegation or denials of his pleadings." *Id.* at 256. The non-movant must go beyond the pleadings to designate specific facts showing that there are genuine factual issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. "When the non-moving party bears the burden of proof at trial, summary judgment is warranted if the non-movant fails to make a showing sufficient to establish the existence of an element essential to its case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (citations, internal quotations, and alterations omitted). Because Plaintiff bears the burden of proof, summary judgment is thus warranted if he fails to make a showing sufficient to establish the existence of an element essential to his case.

Allegations asserted by *pro se* petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, where a plaintiff appears pro se in a civil rights case, the court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). Although the Court must construe the pleadings liberally, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

/ / /

### III. Request for Judicial Notice

Defendants request that the Court take judicial notice of several documents: an unpublished opinion of the California Court of Appeals decided April 30, 2004 on Plaintiff's state habeas corpus petition; Title 15, sections 3084.5(a)(3)(c) and 3084.7(d) of the California Code of Regulations; the certified transcript of Plaintiff's deposition taken on April 13, 2007; and the transcripts of Plaintiff's parole hearings on April 17, 2002, August 17, 2004, and January 12, 2007. Plaintiff did not oppose these requests. The R&R recommended denying as unnecessary Defendants' request to notice the deposition transcript, granting Defendants' request to notice the unpublished opinion on Plaintiff's state habeas petition (but not for the truth of its contents), grant Defendants' request to notice the parole suitability hearing transcripts (but not for the truth of their contents or any party's argument interpreting the meaning of the content at issue), and grant Defendants' remaining request without limitation. Neither party has objected to these recommendations, which the Court therefore **ADOPTS**.

### IV. R&R and Plaintiff's Objections

The R&R includes the following undisputed factual background (R&R at 3:1–4:3), most of which Plaintiff has not objected to and which the Court therefore **ADOPTS**, with the exceptions noted below. Plaintiff was incarcerated at the Calipatria State Prison ("Calipatria") during 1995. Plaintiff drafted a 602 appeal (the "602 Appeal" or the "602") on June 21, 1995 protesting the transfer of certain inmates, and apparently submitted it to someone, although there is no record of it nor is there any record of any responses to it. Defendant Salas was an officer in the Investigative Services Unit ("ISU") at Calipatria from early 1994 through the end of 1995. Defendant Salas had no knowledge of or contact with the June 21, 1995 602 Appeal filed by Plaintiff.

Defendant Salas drafted a Rules Violation Report, also known as a RVR-115 (the "RVR" or the "115"), on August 16, 1995 based on information from a confidential informant. Thereafter, certain handwritten documents were found during a search of Plaintiff's cell. (*See* Player Brief in Supp. of Opp'n to Defs.' Mot. for Summ. J. at 5–6 (discussing the documents found in his cell and their use at his disciplinary hearing); *see also* Player Decl. in Supp. of Obj. to R&R, at 2 and Ex. L (Plaintiff's declaration stating that the papers attached as Exhibit L were written by Plaintiff, and that they were found in his cell after Defendant Salas issued the RVR).) Plaintiff met with Defendant

1  Prunty, was told of the charges against him, and received a copy of the RVR.  He then met with
2  Defendant Davis where he presented his views concerning the RVR.

3  Plaintiff successfully appealed the finding of guilt and imposition of punishment.  The
4  California Department of Corrections and Rehabilitation (the "CDCR"), under orders from the
5  California Court of Appeal, vacated Plaintiff's secure housing unit term, restored the lost 150 days of
6  good-time credit, and redetermined his classification status.  Plaintiff initially did not dispute the
7  CDCR removed references to the RVR from his C-file (Huddleston Decl. in Supp. of Mot. for Summ.
8  J., ¶ 9).  However, in his objections to the R&R, he disputes it and cites evidence in support of his
9  argument. Plaintiff had parole suitability hearings on August 17, 2004 and January 12, 2007.  Plaintiff
10 initially agreed that the RVR was not considered at these hearings, but in his objections to the R&R,
11 now contests it, citing evidence.  These objections will be discussed at length below.

12      **A.    Retaliation Claim Against Defendant Salas**

13 The R&R recommended dismissal of the retaliation claim, finding Plaintiff had presented no
14 evidence Defendant Salas acted on the basis of Plaintiff's having filed the 602 Appeal, or that he even
15 saw it, heard of it, or knew of its existence. (R&R at 6:6–9.)  The R&R found no evidence to support
16 the required elements of causation (*i.e.*, that Defendant Salas acted as he did because Plaintiff had
17 engaged in protected conduct) and failure to advance a legitimate penological goal.  (R&R at 6:1–2;
18 *see also id.* at 5:5:14–19 (outlining required elements of a First Amendment retaliation claim in the
19 prison context, citing *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005)).)  Plaintiff now
20 objects to this, contending Defendant Salas knew the RVR was false and that he purposefully
21 submitted it in order to cause Plaintiff to be punished.  Plaintiff predicts "[a] trial will prove that the
22 motivating factor behind Salas['] false 115 was indeed retaliation for the filing of a 602 by plaintiff."
23 (Obj. at 2.)

24 The only evidence Plaintiff has pointed to that anyone connected with the RVR knew about
25 the 602 Appeal is a remark made by an unidentified ISU officer who removed Plaintiff from his cell
26 after Salas authored the RVR. (Opp'n to Defs.' Mot. for Summ. J., at 2.)  That remark, "You need to
27 learn to do your own time," might support an inference that the unidentified officer knew that Plaintiff
28 had protested the transfer of other inmates.  At most, however, this might show the unidentified officer

1  knew of Plaintiff's connection with a 602 Appeal, not that Defendant Salas knew of it. Because there
2  is no evidence the 602 Appeal was ever received or responded to, however (R&R at 3:7–8, 6:6–9),
3  even this inference is weak at best. More importantly, as noted in more detail below, Plaintiff has
4  admitted he has no evidence Defendant Salas knew about the 602 Appeal, and his allegations of
5  retaliation are based simply on his own belief that Salas knew. Plaintiff suggests the absence of
6  evidence concerning the 602 Appeal is explainable (Obj. at 4), but this merely serves to show why the
7  evidence might not exist, and does not demonstrate the existence of any evidence to support Plaintiff's
8  claim.

9  Plaintiff objects that because Defendant Salas knew the RVR was false, and was based on false
10 information received from an unreliable informant, Salas must have been retaliating against him. (Obj.
11 at 3.) Plaintiff's argument concerning causation is mere surmise and speculation, however. Accepting
12 Plaintiff's argument that the blameworthiness of Defendant Salas' action by itself constitutes evidence
13 of causation would effectively eliminate the causation element. Without evidence that Defendant
14 Salas acted in order to retaliate against Plaintiff for exercise of a Constitutional right, Plaintiff cannot
15 show a violation of his Constitutional rights as is required in a § 1983 action.

16 Plaintiff's claim likewise cannot withstand summary judgment on the basis of his predictions
17 that a trial would prove that retaliation was Defendant Salas' motive. As discussed above, in order
18 to successfully oppose a motion for summary judgment, Plaintiff must identify specific facts
19 supporting his claim. *Anderson*, 477 U.S. at 250 (holding that the non-moving party must go beyond
20 the pleadings to designate specific facts showing that there are genuine factual issues that "can be
21 resolved only by a finder of fact because they may reasonably be resolved in favor of either party");
22 *Nebraska*, 507 U.S. at 590 ("When the non-moving party bears the burden of proof at trial, summary
23 judgment is warranted if the non-movant fails to make a showing sufficient to establish the existence
24 of an element essential to its case.") If a prediction that a plaintiff's claim would be proved at trial was
25 all that was required, summary judgment would be virtually eliminated. *See Celotex*, 477 U.S. at 327
26 ("Rule 56 must be construed with due regard . . . for the rights of persons opposing . . . claims and
27 defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses
28 have no factual basis.")

1    Plaintiff only briefly objected to the R&R's analysis of the required element of failure to
2 advance a legitimate penological goal. (Obj. at 4.) In so objecting, he refers indirectly to Defendant
3 Salas' lack of evidence to show that his confidential informant was reliable, and lack of evidence that
4 the allegations in the RVR were more than mere fabrications. (Obj. at 3–4.) Plaintiff's objections,
5 however, point merely to a lack of evidence, or to flaws in the evidence Defendant Salas relied on, and
6 not to any evidence Plaintiff may have. The fact that the disciplinary action taken against Plaintiff was
7 later reversed would show that the RVR was considered inadequately supported, but it does not suffice
8 to show Defendant Salas lacked a legitimate penological goal in authoring or submitting it.

9    Because Plaintiff lacks element to support these two essential elements of his claim, summary
10 judgment for Defendant Salas on this claim is proper.

11    **B.    Affidavit and Declaration Submitted with Objections to R&R**

12    In his objections to the R&R, Plaintiff included an affidavit from a former cellmate attesting
13 to the fact that he wrote and submitted the 602 Appeal. (Ex. L in Supp. of Obj. to R&R.) In support
14 of this affidavit, Player includes his own declaration saying he typed the affidavit and forwarded it to
15 a person who located his former cellmate and who then sent the affidavit to the former cellmate.
16 (Player Decl. in Supp. of Obj. to R&R at 1.) Along with the affidavit, Plaintiff declares, the person
17 who located his former cellmate forwarded instructions to sign it only if it accurately described what
18 he remembered, and to forward an affidavit in his own words if it did not. (*Id.*) Plaintiff's former
19 cellmate apparently signed and returned the affidavit Plaintiff drafted. (*Id.* at 2.)

20    It is therefore apparent that the affidavit was drafted based on what Plaintiff himself already
21 knew, without any additional information from Plaintiff's former cellmate. Because the Court has
22 found Plaintiff's own potential testimony insufficient to show Defendant Salas knew of the 602
23 Appeal, the same testimony from another witness cannot create a genuine issue of material fact. Even
24 if Plaintiff drafted the 602 Appeal and gave it to someone, there is no evidence of its being received,
25 or of any response to it, nor is there any evidence that Defendant Salas ever found out about it. As
26 discussed below, Plaintiff himself admitted he had no basis, other than his own inferences and beliefs,
27 that Defendant Salas had any connection with or knew about the 602 Appeal.
28 / / /

1   Reading the declaration and affidavit more broadly, Plaintiff may be arguing that Plaintiff
2   could if permitted produce testimonial evidence the 602 Appeal was submitted to someone who told
3   Defendant Salas about it.  To the extent Plaintiff may be making this argument, however, the Court
4   would reject Plaintiff's declaration attesting to the affidavit of his former cellmate, under the "sham
5   affidavit rule," which prevents a party from creating a material issue of fact on a motion for summary
6   judgment by offering an affidavit that without explanation contradicts his prior testimony.  *See*
7   *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  Plaintiff previously testified he
8   knew of no witnesses or any evidence that could show Defendant Salas knew of or had any contact
9   with the 602 Appeal, and he based his allegations on his own inferences only:

> Q. Did you ever show this inmate appeal to Mr. Salas?
> A. No.
> Q. Did you ever mail this 602 to Mr. Salas?
> A. No.
> Q. Have you ever met with Mr. Salas personally?
> A. No.
> Q. How do you know — well, let me ask you this question: Do you believe that Mr. Salas ever learned about the 602 that you filed on behalf of other African-American inmates?
> A. Yes.
> Q. How do you know?
> A. It's my belief that I was targeted, written up, put away in Ad Seg, then later in SHU, in retaliation for filing that 602, and Mr. Salas is the person who filed that 115 that made all that come about.

(Aronis Decl. in Supp. of Mot. for Summ. J., Ex. B (transcript of Plaintiff's deposition) at 20:6–22.)

> Q. . . . .[D]o you have any documents in your possession or control that can link Mr. Salas to your 602?
> A. No.
> Q. Do you have any witnesses, whether they are inmates or correctional officers or any other persons, that can link Mr. Salas to your 602?
> A. No.

(*Id.* at 21:8–15.)

> Q. Now, you've testified that you believe that Mr. Salas was retaliating against you based upon the statement of this ISU officer; is that correct?
> A. I draw the inference, yes.
> Q. Okay.  Aside from that inference, do you have any other hard evidence, and by hard evidence I mean witnesses or documents, that can prove that Mr. Salas knew anything about the 602 that you filed?
> A. No.

(*Id.* at 22:22–23:5) (*See also id.* at 17:4–18:11 (transcript of Plaintiff's deposition, explaining that
Plaintiff only once followed up on his 602 Appeal, in a letter he sent to the prison law office at San

Quentin, and that he never followed up with the appeals coordinator at Calipatria).)   Plaintiff knew what his former cellmate could testify to, as confirmed by the fact that Plaintiff himself drafted the affidavit. (Player Decl. in Supp. of Obj. to R&R, at 1–2.)  To the extent Plaintiff now represents his former cellmate's testimony can show Defendant Salas knew about the 602 appeal, he contradicts his own earlier testimony, and Plaintiff offers no explanation for the contradiction.

### C.     Procedural Due Process Claims Against All Defendants

As noted above, the Court previously ordered Plaintiff to show cause why this claim should not be dismissed as moot in view of the fact that his 150 days of good-time credits had been restored. In response, Plaintiff cited *Edward v. Balisok*, 520 U.S. 641, 645 (1997) for the principle that a state prisoner may be entitled to recover at least nominal damages if he can show he was deprived of good-time credits without due process.  Plaintiff argues that because his parole suitability hearings were delayed, he has shown ongoing harm.  He also contends the allegedly false RVR remains in his file and continues to be considered in parole suitability hearings.

The outcome of Plaintiff's parole suitability hearings does not support Plaintiff's argument because, even without considering the RVR, the board found him unsuitable for parole.  Plaintiff objects that the RVR was considered, but the materials he contends were considered in fact do not include the RVR.  In particular, he points to a document dated December 23, 2005 summarizing the information contained in Plaintiff's file and, he argues, considered by the board.  (Obj. at 5 (citing Opp'n to Mot. for Summ. J., Ex. H).)  The cited document, however, does not refer to the RVR, but to another document, apparently the five pages found in Plaintiff's cell.  As Plaintiff admits, this document is not the RVR, and was discovered only after the RVR had been prepared.  While Plaintiff disputes the proper interpretation of this document, referring to it as a "play" or "pure fiction" with no relationship at all to reality, he does not dispute its authenticity and has, in fact, attached a copy of it to his objections to the R&R, as Exhibit L.[1]  Plaintiff has therefore identified no evidence to support his argument that his parole has been delayed because of Defendants' actions.

/ / /

---

[1] This document begins with two pages of what Plaintiff himself describes as imagined unrelated events, after which the third through fifth pages commence on a discussion of the history and organizational principles of the Raymond Avenue Crip organization and Blue Note Crip Organization.

*Edwards*, however, does hold that nominal damages are available for procedural due process violations in the prison context, once the conviction has been invalidated, as is the case here. 520 U.S. at 645 (citing *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978)). *Accord Farrar v. Hobby*, 506 U.S. 103, 112, 113 (1992) (holding that the denial of procedural due process rights is actionable for nominal damages even without proof of actual injury). Accordingly, the Court holds that, to the extent Plaintiff seeks nominal damages, his claim is for violation of his procedural due process rights is not moot.

The R&R concluded uncontested evidence showed the due process rights required under *Wolff v. McDonnell*, 418 U.S. 539, 556–57 (1974) were provided to Plaintiff at the hearing where he was deprived of good-time credits and confined in administrative segregation. (R&R at 7:16–25.) While Plaintiff objected to other portions of the R&R, he did not object to this finding. Even accepting as true Plaintiff's contention that Defendant Salas knew the RVR he authored was false, the filing of false charges is not itself a due process violation, provided the procedural due process requirements of *Wolff* are observed. *Hanrahan v. Lane*, 747 F.2d 1137 (7th Cir. 1984); *Freeman v. Rideout*, 808 F.2d 949, 952 (2d Cir. 1986) (citing *Hanrahan*). Therefore, summary judgment is appropriate on this claim.

## V.    Request for Reconsideration

On March 22, 2007, the Court dismissed Plaintiff's due process claims for term of 288 days in the Security Housing Unit, or SHU. Plaintiff requests the Court's reconsideration of this dismissal, citing *Ramirez v. Galaza*, 334 F.3d 852 (9th Cir. 2003) for the principle that before doing so, the Court should have applied the factors set forth in *Sandin v. Conner*, 515 U.S. 472, 486–87 (1995).

In dismissing Plaintiff's claim, the Court relied on *Sandin*'s holding that "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might create a liberty interest." 515 U.S. at 486. The Court also noted that Plaintiff had not alleged facts showing his segregated confinement was more restrictive than the sentence imposed on him, or was an atypical and significant hardship in relation to the ordinary incidents of prison life. (Order of March 22, 2007, at 5:20–26 (citing *Turnstall v. Beck*, 65 F.3d 176 (9th Cir. 1995) (further citations omitted).) In his request for reconsideration, Plaintiff has not alleged or cited such facts, nor has he given the Court any other legal or factual reason to reconsider its earlier ruling. The request for reconsideration is therefore **DENIED**.

## VI. Conclusion and Order

For these reasons, Plaintiff's objections to the R&R are **OVERRULED** and the R&R is **ADOPTED**, with the additional analysis provided above. Defendants motion for summary judgment is hereby **GRANTED**. Although Plaintiff was previously given leave to amend his complaint to remedy defects identified therein, he did not do so within the time permitted. All claims have now been dismissed or summarily adjudicated. This action is therefore **DISMISSED WITH PREJUDICE**. All pretrial dates are hereby **VACATED**.

**IT IS SO ORDERED**.

DATED: September 18, 2007

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge